## Frederick Leka v. James Baker and Edward Baker.

1. DRAINAGE—*Statute of 1889 Construed.*—The act of June 4, 1889, (Laws, 1889, 116,) refers only to ditches or drains constructed or connected by mutual license, consent or agreement of the owners of lands. Acts which have no tendency to establish a mutual license or agreement within the meaning of the law are not sufficient.

2. SAME—*License by Parol.*—A parol license to construct a ditch upon the lands of another may be revoked.

3. APPELLATE COURT PRACTICE—*Defenses Not to be Made for the First Time in the Appellate Court.*—A defendant can not be permitted

to shift his ground and to build up in the Appellate Court for the first time a defense resting wholly upon an incidental and merely casual remark of a witness, upon which a defense might have been based in the court below.

**Memorandum.**—Action of trespass on the case for cutting ditches, etc. In the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Declaration and plea of general issue; trial by jury; verdict and judgment for plaintiff; defendant appeals. Heard in this court at the November term, 1893, and affirmed. Opinion filed April 28, 1894.

## STATEMENT OF THE CASE.

This is an appeal from a judgment against the appellant in the sum of $500 for damages to the lands and growing crops of the appellees, occasioned in 1889 and 1890 by water unlawfully, as it is alleged, caused to flow thereon by the appellant. At the time and for a number of years prior thereto the appellant was the owner of a body of land three-fourths of a mile square, containing 360 acres. The conformation of the surface of his land was such that the natural drainage of about 80 acres of its easterly part was toward the east. This part of the tract was bounded on the southwest, west and north by a ridge or elevation beyond which the surface waters flowed in other directions. The appellant, in 1877 or 1878, cut a large ditch beginning at a point on the east line of his tract about one-fourth of a mile south of its northeast corner and extending in a southwesterly direction through the ridge or elevations before mentioned and into his lands lying west and northwest thereof, and by a system of lateral ditches and drains diverted the surface water upon some 280 acres of land from its natural course, which was to the south and west, and caused it to flow in a northeasterly direction into his main ditch, and to be thereby conveyed through the ridge or higher ground and finally discharged at the mouth of such ditch upon adjoining premises then owned by one C. W. Turner.

The premises belonging to Turner were subject to the burden of receiving the water from that portion of appellant's land lying east of the ridge or elevation before spoken

of, and he had constructed a small ditch for the purpose of conveying such water through his land into a natural watercourse. Appellant's large ditch was dug so that it connected with and discharged its waters into the small drain made by Turner. It is contended and there is evidence in support thereof that Turner consented that the ditches might be so connected but it seems that he did not then know that the appellant intended to extend his ditch through the elevation upon his land; at least, the evidence shows that Turner complained when he became cognizant that the appellant was so digging the ditch that it would bring water from his land beyond the ridge and discharge it upon his premises, and they had trouble and differences about the matter, and that Turner revoked the permission given to connect the ditches and filled up the ditch upon his own premises so that water could not flow out of appellant's ditch into it. This was done some time prior to the year 1887. In January of that year Turner died. Appellant contends that his tenant, with the consent of the administrator of Turner's estate, did some work in the way of reopening the ditch, but the administrator denies that he gave such authority, and it appeared that the tenant objected when he learned that the appellant tenant was at work in the ditch and caused him to quit, leaving the ditch still obstructed and practically closed. This was the condition when the appellees purchased the land March 12, 1889. A tenant of the appellant testifies that in that year he obtained the consent of the appellees to clear away the obstruction in the ditch and did some work to that end. The appellees denied this and it does not appear that the tenant was acting for the appellant but only for himself and in his own interest. This action was to recover damages to appellees' lands and crops occasioned by water caused to flow upon it from appellant's ditch in 1889, and up to July, 1890. It is not complained that the damages allowed are excessive.

J. E. DOWLING and PALMER, SHUTT & DRENNAN, attorneys for appellant.

Conkling & Grout, attorneys for appellees.

Mr. Presiding Justice Boggs delivered the opinion of the Court.

This case was before us at a prior term and was remanded to the Circuit Court, since when it was submitted to a jury and a verdict and judgment for the appellees rendered, from which this appeal is prosecuted. The general principles applicable to the subject-matter of the contention are, it is believed, correctly announced in the former opinion of this court. Baker et al. v. Leka, 48 Ill. App. 353. The trial court instructed the jury upon the hearing, which resulted in the judgment now appealed from, that a verbal license to use or maintain a ditch was revocable. This is complained of as error, not that the general rule is incorrectly stated, but that an exception thereto, created by the enactment of Sec. 1 of the act of June 4, 1889, in force July 1, 1889, which, it is contended, applies to this contention, was ignored. This act of 1889 provides that ditches or drains constructed by mutual license, agreement or consent of the owners of adjoining lands, so as to form a continuous line across the lands of several owners * * * should be held and deemed a drain for the mutual benefit of all the lands, and that parol license or agreements between such owners for the construction of any such drains should be deemed irrevocable, if not actually revoked, within one year after the act should take effect. We do not think the evidence produced upon the trial of this case brought it within the operation of the act of 1889. If Turner ever consented to the construction of a ditch upon the lands now owned by appellee as a part of appellant's system of drainage, which may well be doubted, it is beyond controversy that he revoked such consent or license and filled up the ditch in his land before the passage of the act. We have examined the evidence referred to by counsel for appellants in their brief, upon which they rely to support their contention that the appellees, just before or soon after the passage of the act, consented that the Turner

ditch should be reopened and used as a part of a continuous line of drain, and also, in the same connection, examined the record as to the defenses sought to be interposed to the action by the appellant. We are of opinion that the action of the court in the matter of the instructions is not justly open to the complaints made by the appellant. The only evidence to which we have been referred, or which we have been able to discover, bearing upon appellant's claim that the appellees agreed or consented that the ditch upon their land should become a part or continuation of appellant's drain, is the testimony of Edward Clendenin, who rented a portion of the land of appellant for the year 1889. He was introduced as a witness by appellant for the purpose of giving testimony as to the conformation of the surface of appellant's land, and to show that the surface waters thereon naturally drained upon appellee's premises, and that the appellees obstructed the flow of such water by hauling and shoveling earth into a ditch, which, as the witness claimed, was then open upon their land from the mouth of appellant's ditch to a depression or waterway in the field of the appellees. His examination in chief had no reference to the alleged license or agreement of appellee, and he had made no statements relative thereto when appellant closed the examination. Upon cross-examination he stated, incidentally, and not in response to any question, that when he was cultivating the land he had rented of appellant in 1889, he applied to the appellees for, and was by them, or one of them, granted permission to clean out and reopen the ditch that Turner had filled, and that he did remove obstructions therefrom, so that the water could and did flow through it.

It does not appear that the witness was acting as agent for the appellant or at his instance, or that the appellant had knowledge of, or was in any respect party to the alleged permission given by the appellees or to the acts of the witness in pursuance thereof. The statute of 1889 by its express terms refers only to ditches or drains constructed or connected by mutual license, consent or agreement of the

owners of the lands. The testimony under consideration did not purport to establish an agreement or license granted to the appellant by the appellees, but only that a privilege or favor had been granted to the witness by the appellees, and had therefore no tendency to establish a mutual license or agreement within the meaning of the act of 1869.

Further, appellant did not, by the witness Clendenin or any other witness, seek to establish a supposed license or mutual agreement with appellees for a continuous line of ditches. No question was propounded in his behalf to Clendenin or to any other witness for this purpose, nor did he seek by instruction or otherwise to bring the supposed agreement to the knowledge or notice of the court or jury. There is nothing in the record to indicate or from which the slightest intimation could be drawn that counsel who represented the appellant upon the trial in the Circuit Court sought or desired to invoke in behalf of the appellant any of the provisions of the act of 1889 or that they regarded the limitations placed by the act upon the right to revoke a parol license as at all involved in the contention. The act and its provisions were as completely ignored by the appellants as by the court, and the attempt to insist in this court that the appellant was deprived of the benefit of the change effected by such legislation seems clearly the result of mere afterthought. The appellant can not be permitted to so shift his ground and to attempt to build up in this court for the first time a defense resting wholly upon an incidental and merely casual remark of a witness upon which some such defense might have been based. Had it been urged in the Circuit Court, it might have been fully met by the appellees. The objections urged against the other instructions are grounded in the main upon the same contention, that the provisions of the act of 1889 were ignored. We have examined the instruction in respect of the objections based upon other grounds, and think them free from substantial error and in harmony with the principles announced in our former opinion in the case.

Further discussion of such objections is not deemed nec-

essary.. It was not error to admit the testimony of witnesses tending to contradict a statement of appellant that he had not been at the farm within a certain period of time. We think the judgment right upon the merits and that there is no error in the record demanding its reversal. It is affirmed.

It is also ordered that the fees for this additional abstract furnished by the appellees be taxed to the appellant.